<hr/>

## In re JEFFREY'S WILL.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1909.)

1. WILLS (§ 324*)—PROBATE—DENIAL—QUESTIONS OF FACT—TRIAL BY JURY.

On an application for the probate of a will contested on the grounds of the incompetency of testatrix and fraud and undue influence, evidence *held* to require the reversal of the decree of the surrogate refusing probate, and the submission to a jury of the issues of testamentary capacity and of fraud and undue influence, as provided by Code Civ. Proc. § 2588.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 767–770; Dec. Dig. § 324.*]

2. INFANTS (§ 85*) — GUARDIAN AD LITEM — DUTIES AS TO LITIGATION — WILL CONTEST.

A guardian ad litem of minor grandchildren of a decedent appointed to protect the interests of the children in proceedings for the probate of the will of decedent. contested on the grounds of testamentary incapacity, fraud, and undue influence, may contest the will on the ground that a prior will is more beneficial to the children.

[Ed. Note.—For other cases, see Infants, Dec. Dig. § 85.*]

3. WITNESSES (§ 139*)—COMPETENCY—TRANSACTIONS WITH DECEASED PERSONS—"PARTIES TO THE PROCEEDINGS."

Where, in proceedings to probate a will revoking all former wills, beneficiaries in a prior will became parties on their own application and contested the probate, they were incompetent to testify to personal transactions with decedent, they being interested in the event and "parties to the proceeding" within Code Civ. Proc. § 829, prohibiting a party or one interested in the event to testify concerning a personal transaction with a deceased person.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 139.*

For other definitions, see Words and Phrases, vol. 6, p. 5213.]

<hr/>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. WILLS (§ 409*)—PROCEEDINGS FOR PROBATE—COSTS—ALLOWANCE.
    No allowance of costs should be made in contested proceedings for the
    probate of a will until the end of the litigation.
    [Ed. Note.—For other cases, see Wills, Dec. Dig. § 409.*]

Appeal from Surrogate's Court, Monroe County.

In the matter of the probate of the will of Mercy A. Jeffrey, deceased. From a decree of the surrogate refusing probate and making allowances of costs to the successful parties, proponent appeals. Reversed on questions of law and fact, and remanded for trial by jury of the issues of fact as to the testamentary capacity of the testatrix, the fact of execution of the alleged will, and as to fraud or undue influence.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Edward R. Foreman and John Desmond, for appellant.

Fletcher C. Peck, Eugene Van Voorhis, and George H. Smith, for respondents.

WILLIAMS, J. The decree should be reversed upon questions of law and of fact, and an order made directing the trial by a jury of the material questions of fact arising upon the issues between the parties, under section 2588 of the Code of Civil Procedure, with costs to the appellant to abide event.

We are not satisfied with the result in this case, and therefore think there should be another trial before a jury, in accordance with the rule laid down in Matter of Burtis, 107 App. Div. 51, 94 N. Y. Supp. 961, and the cases therein referred to, which was decided by this department, and has been followed in many cases since decided by us.

How much should be said about the facts, when another trial is to be had, is a question involving some difficulty. We feel, however, that some reasons should be given for our action, which necessarily involves considerable expense to the estate and the parties interested therein.

Mercy A. Jeffrey, a widow, died in the city of Rochester, October 13, 1906, at the age of 80 years. She made two wills prior to her death. One was executed October 2, and the other October 11, 1906, both within 11 days of her death. She was sick and feeble when these wills were made. She had no serious disease. She died of diarrhoea. She was a white woman. She was twice married. Her first husband was a white man, and by him she had a daughter, who married Mr. Schantz. Her second husband was a negro, Roswell D. Jeffrey, by whom she had no children. Mr. Jeffrey had formerly been married, and had a son by such marriage, Roswell J., who with his wife, Hester C., were negroes. The marriage of deceased and Mr. Jeffrey took place October 10, 1861. I do not find any statement in the record as to when Mr. Jeffrey died, but it was many years ago, and for 15 years prior to the death of the deceased she lived in the family of the Schantzes, her daughter and son-in-law. He kept the house. The daughter died in January, 1904, leaving her husband and their three

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

children, a daughter, Mercy E., 14 years of age at the death of her grandmother, a son, Joseph M., 12 years of age, and another daughter, Marion F., 9 years of age, and then the deceased, the son-in-law, and the three grandchildren continued to live as one family until the death of deceased, two years later. Mr. Schantz was a business man, engaged in the furniture and mattress business in Rochester. That was the trade which he had always worked at. He was on good terms with deceased. She at one time, June, 1902, loaned him $10,000 to put in his business, and took his note for it. She advised with him as to her property and business, and he did business for her, as to the rental of her real property, the amount of rents to be charged, and the character of the tenants, repairs, new construction, and the placing of fire insurance policies. The deceased at her death had real property of the value of about $100,000, no part of which came from her husband, Mr. Jeffrey, and $50,000 of personal property.

In 1906 her stepson and daughter, Roswell J., and Hester Jeffrey, were frequent visitors at the Schantz house, and were more or less with deceased while Schantz was away at his business. Deceased was taken sick along in September, 1906, and Dr. Wilburn, attended her. She had a nurse also, Martha C. James; and then there was a Mrs. Nellie Hackett, who was a friend of deceased and was a visitor at the house also. She was looking after some compensation for former alleged services rendered deceased. There was talk of a provision for her benefit in the will, but deceased was finally induced to and did give a check for $1,500 to Mrs. Hackett in September, 1906. Then there were two lawyers called to the house by Mrs. Hester Jeffrey or Mrs. Hackett, Quincy Van Voorhis and George H. Smith. These people had to do with a will executed by deceased October 2, 1906. They visited the house, and did their work during the hours of the day when Mr. Schantz was away from home, engaged in his business. The will was witnessed by the nurse and a neighbor, Mrs. Ream, who was called in by Mrs. Hester Jeffrey, and Van Voorhis took possession of it and carried it away. The deceased had on deposit in the Alliance Bank of Rochester $3,452.74, and October 3, 1906, the next day after the will was executed, the deceased made a power of attorney to Mrs. Hester Jeffrey to draw checks upon this account.

Mr. Schantz was not aware of what was going on while he was away from home, or of the making of the will and power of attorney by deceased, and apparently did not hear about them until the 11th of October, 1906, when it seems he went to Van Voorhis' office and asked him if he knew whether deceased had made a will. Van Voorhis said she had, and he wanted to know when it was made. Van Voorhis told him the 2d of October. Schantz asked if he, Van Voorhis, had it, was told that he had, and asked to see it. Van Voorhis told him it would not be proper for him to show it to any one, but he did not think it was a will he, Schantz, could find any fault with. Schantz was then in this position. The deceased was old, feeble, sick, and had been for some time, certainly from a time prior to the execution of the will and power of attorney. While in this condition she had a will, and he was not permitted to see it or know

its contents. His three infant children were her only blood relations, and he was their father, their natural protector. The deceased was liable to die before very long, and until she died, neither he nor the children could know whether the interest of the children had been sacrificed for the benefit of others, especially the stepson and his wife. It was at least suspicious that the doing of the business, whatever it was, had been and was being kept entirely secret from him and the children. It is very probable that Mr. Schantz then did what he could to protect his children. The nurse and physician who had been in attendance upon deceased while these secret meetings were being held in his absence were discharged, and others procured to take their places, another lawyer prepared a second will, and it was executed October 11, 1906, and there was also executed at the same time by deceased a general power of attorney to Schantz to do her business.

Whether this will was procured by reason of the incompetency of the deceased, or by the use of fraud or undue influence, is the question involved in this litigation and the one passed upon by the surrogate.

Mr. Schantz and the children were not competent witnesses as to transactions with the deceased. The persons who did have personal transactions with the deceased concerning the execution of the will were witnesses before the surrogate, and then there were witnesses upon the other side, and among them the stepson and his wife, Mr. and Mrs. Jeffrey, who gave the most important evidence and that relied upon materially by the surrogate in deciding to deny probate to the will. These two witnesses were incompetent to testify to personal transactions with the deceased, and their evidence should not have been received, considered, or relied upon by the surrogate.

A comparison of the two wills executed by the deceased shows a very material and important difference therein. Both wills contain provisions for the payment of debts, funeral expenses, etc., and then the first will gives to Mr. and Mrs. Jeffrey a house and lot on Hester street, in the city of Rochester, to be free and clear of all incumbrances, and the remainder of her property to the three grandchildren and the survivors of them, but directs the executors to take possession of the property and collect the income therefrom, to sell and convey same, in their discretion, and to divide the property between the persons entitled thereto in such manner as to effect in their judgment a fair, equal division thereof, the division not, however, to be made until the youngest child, 9 years old, becomes 21 years of age, unless the executors think best to make a whole or partial division sooner, the income, and, if necessary, the principal, to be applied to the maintenance, support, and education of the children. Eugene Van Voorhis and George H. Smith, one of the lawyers who was consulted about the will, are made executors. There is also a provision for the benefit of Mr. Schantz, giving him one-half of an indebtedness alleged to be owing by him to deceased of $10,000 (on the trial it was shown this indebtedness was discharged, in 1904, two years before the making of the will).

The second will gives all the property of the deceased to Mr. Schantz and his three children in equal quarterly shares, contains a power of sale, and appoints Mr. Schantz executor. When this last will was presented for probate, citations were issued to the three chil-

dren only, but Mr. and Mrs. Jeffrey and the two executors named in the first will came into court and made affidavits as to their interests under the former will, and upon their application were made parties, and answered contesting the probate of this the second will.

The surrogate appointed Mr. Peck, guardian of the three Schantz children, to look after their interests in the matter, and he also answered contesting the probate of the second will. He entered very vigorously into the contest, took a leading part, and attacked the father of his cestui que trust, charging him with fraud, undue influence, and with securing the will from the deceased when she was wholly incompetent and had no knowledge of what she was doing. He presents the only brief made in this court in support of the decree, and in that brief he argues at some length that the first will is the better one; that it expresses the intelligent, deliberate purpose of deceased, was the product of long consideration and consultation with her trusted attorney, etc. Very likely it was within the province of the guardian, when called into court, to determine which side of the controversy, if either, he should espouse, which will he should support and seek to uphold, and we cannot say that he did not act in accordance with his best judgment, but taking into consideration the contents of the two wills as affecting the interests of the two infants, and the secrecy with which the first one was made; the fact that Schantz was the father of the children, that they were young, and that he was their natural protector, and more interested in them than strangers could be; that the first will tied the property up for years in the hands of lawyers, as executors, who would be entitled each to full fees as executor, the estate exceeding $100,000; that it made no provision whatever for Schantz, the natural protector of the children, the husband of the deceased's daughter, and in whose household she had lived for many years, and whose advice as to business matters she had taken—it seems to us unfortunate that the guardian could not have taken a more favorable view of the second will, and have seen that the real and true interest of his cestuis que trust was in the saving of that will and the consequent destruction of the first one, or at least have sought a settlement by allowing the Jeffreys to have the house and lot, and letting the other property pass under the second will, or have taken no sides, but have submitted the interest of his cestuis que trust to the determination of the court.

How was the gift to Schantz in the second will, under all the circumstances, unfair or improper? As we have suggested, he was the father and natural guardian of the children. They were still young, and he had imposed upon him the duty for many years of looking after and caring for them. In justice, should he not have some provision made for his benefit?

The second will seems to us, in view of all the circumstances, fair and just. Of course, if the guardian had taken the other side or had not taken sides at all, the Jeffreys and the executors under the first will could still have carried on the contest against the probate of this will, and might have succeeded, and in that event the first will could be presented for probate, and might then be contested by the guardian, and whether it would be admitted to probate or denied probate would

be determined upon the evidence then submitted. We make no suggestions as to the validity of the first will—that question is not here—but suggest whether it is not unfortunate that the guardian should have thrown his influence in favor of the first will and against the second one, and practically have conducted the whole contest for the benefit of the parties interested in the first will.

The decision of the surrogate upon the facts, certainly, should not stand, it having been based largely upon the incompetent evidence of the two Jeffreys. The surrogate recites the most important evidence given by Mrs. Jeffrey as to her personal transactions with the deceased on October 11th, and closes by saying that this and other evidence satisfies him the will was not deceased's, and was procured to be executed by undue and improper influence.

The brief of the guardian does not dispute the proposition that the Jeffreys were interested within the provisions of section 829, Code Civ. Proc., but argues that some of the evidence given by them was competent, and the remainder might be disregarded and still the same decision arrived at. The evidence of these witnesses was incompetent. They were not only interested in the event, but they were parties to the action or proceeding, made such upon their own application and affidavits, wherein they testified to the nature of their interest. Moreover, the second will expressly revoked all former wills, and if this was admitted to probate, these people being parties to this proceeding could not again litigate the question as to the revocation of the first will. We think the admission and consideration of this incompetent evidence calls for a reversal of the decree, as a matter of law, so that the reversal should be put upon the law and the facts.

The allowances of costs, which are objected to by the appellant, are a part of the decree and fall with a reversal of the decree. No allowances should be made now until the end of the litigation.

We regret that this estate is put to the expense of a trial by jury of the issues of fact here involved. It is always a matter of regret with us when this disposition of a will contest is made, and in this case it is particularly so because such expensive counsel are engaged in it— counsel who regard their services as worth $100 per day, and who are allowed at that rate for their services by the surrogate, amounting to $4,300. The expense of such a trial, however, cannot be avoided if the contest is persisted in by the parties, instead of settlement being effected, under the direction and with the consent of the court. All concur; ROBSON, J., in result only.