WILLIAM C. LESSTER, 2d, Respondent, *v.* GRACE FELIX LESSTER and Others, Appellants.

First Department, June 8, 1917.

Will — evidence not establishing undue influence or lack of testamentary capacity — disability of old age not equivalent to testamentary incapacity — evidence — declarations of testator, when incompetent on issue of undue influence — declarations subsequent to execution of will — declarations of testator's wife — testimony of legatee under former will.

Action to determine the validity of the probate of a will pursuant to the provisions of section 2653a of the Code of Civil Procedure, the plaintiff, a grandson of the testator, alleging lack of testamentary capacity, fraud and undue influence. The testator at the time of his death was about eighty-one years old, and the will had been executed about four months previous, and had been preceded by at least three other wills. Aside from a legacy to his sister in law, who lived with him, he left the bulk of his property to his second wife and to his children by her. The plaintiff is a grandson through a former wife, from whom the testator had been divorced.

Evidence examined, and *held*, insufficient to establish either lack of testamentary capacity, fraud or undue influence, and that a judgment for the plaintiff should be reversed and his complaint dismissed.

A declaration by the testator that he was transferring property to his wife with a view of protecting his children is no indication of his incompetence and is consistent with an intelligent judgment that he has sufficient confidence in his wife to look after her own and his children.

Nor is incompetence shown by his yielding to the suggestions of a friend who urged him not to satisfy certain mortgages on lands owned by a corporation which he controlled, so that his children should be less dependent upon their mother.

Mere age and the attendant impairment of physical and mental faculties does not make one incompetent to make a will.

Declarations made by the testator prior to the execution of the will, while competent on the question of testamentary capacity if not too remote, are mere hearsay, and, therefore, incompetent upon the issue of undue influence.

Declarations of the testator showing his state of mind a few hours before his death, when aroused from a comatose condition, shed no light on his state of mind at the time of the execution of a will, three months before, and especially so as respects the issue of undue influence.

Testimony by a nurse attending the testator in his last illness to the effect that the testator's wife stated that he talked and acted foolishly after receiving a slight injury, which declarations were made long subsequent to the execution of the will, would only be admissible for the purpose of impeaching the widow as a witness, after a proper foundation had been laid therefor by asking her if she had not so stated.

*Quære*, as to whether a legatee under a prior will of the testator is debarred by section 829 of the Code of Civil Procedure from testifying to declarations of the testator when making said will, where there was another will intervening between said will and that offered for probate, such witness not deriving his interest under an immediately preceding will.

In any event, such declarations to the effect that the testator did not feel free to state his views with respect to the disposition of his property in the presence of his wife and sister in law do not tend to show undue influence upon the testator at the time he executed a later will.

APPEAL by the defendants, Grace Felix Lesster and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of April, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 8th day of May, 1916, denying defendants' motion for a new trial made upon the minutes.

The action was brought to determine the validity of the

probate of a paper dated the 26th day of October, 1910, purporting to be the last will and testament of William C. Lesster, deceased.

*Morgan J. O'Brien* [*Albert B. Boardman* and *Henry F. Herberman* with him on the brief], for the appellants.

*Eliot Norton* [*James F. Lynch* with him on the brief], for the respondent.

LAUGHLIN, J.:

This action was brought by the grandson of the testator, pursuant to the provisions of former section 2653a of the Code of Civil Procedure, to determine the validity of the probate of the will. The plaintiff alleged that the testator was of unsound mind and incapable of making a will and that the execution of the alleged will was procured by fraud and undue influence on the part of testator's wife, Grace Felix Lesster, her sister, Mamie Felix, and one Louis Schrag, named as one of the executors, and other persons unknown to the plaintiff, who conspired together to that end.

The will was executed at the residence of the testator in the city of New York on the 26th day of October, 1910, and the testator died at St. Augustine, Fla., on the 27th day of January, 1911. The testator went to Florida accompanied by his wife, his two children, his mother-in-law and sister-in-law about thirteen days before his death. The certificate of death filed by the attending physician in Florida showed that death was caused by "Pulmonary Oedema Mitral Regurgitation Chronic Nephritis Pleurisy." The precise age of the testator was not shown, but the evidence indicates that he was about eighty-one years old. He was born in England and came to this country when a young man, and in 1868 married Josephine E. Morris, with whom he lived until 1904, when they were divorced by an Indiana decree. The only issue of that marriage was a son, Edward, who died in 1901, leaving the plaintiff, his son and only heir at law. The plaintiff was born at the testator's home where his parents then lived, and with the exception of a period of three years continued to reside there until after his mother's second marriage, when he was eleven years of age. The

testator owned a studio building in West Twenty-third street, New York city. Shortly before the divorce from his first wife the testator became acquainted with the young woman who subsequently became his second wife. She was the daughter of one of his tenants. At this time he was over seventy-five years of age, and she was twenty-one. They became engaged during the following month and were married on the twenty-second day of August of that year. There were born to them as the issue of the marriage the appellant William C. Lesster, Jr., in July, 1907, and the appellant Grace C. Lesster in August, 1910. About one year after the marriage the sister of the second wife came to live with them and she thereafter made their home hers. About five months after the marriage the testator made a will by which he left a legacy of $100,000 to his wife, and directed that the residue of his estate be divided into twelve equal shares, six of which he gave to her, one to a sister, one to a nephew, three to three nieces *and the remaining one to the plaintiff.* On the 14th day of March, 1908, he executed a second will giving his wife all his household furniture and effects, and a legacy of $100,000, and one-half of his residuary estate, and the other one-half in trust for his son until he should arrive at the age of twenty-five years, when he was to receive the principal. A codicil thereto was executed on the 1st day of July, 1908, and thereby the testator revoked the provisions with respect to the disposition of the *residue* of his estate, and directed the executors to convert it into money and to pay seven legacies of $3,000 each, one to the husband of a deceased sister, one to a nephew, three to nieces, one to Judge Clinch, who was then his attorney and drew the will and codicil and the former will and possibly a third will, and *one* to the plaintiff, and gave the remainder to his wife; but in the event that she should not survive him he gave it in trust for his son. On the 28th day of June, 1909, he executed a third will, changing the provisions with respect to the disposition of the residue by dividing it into halves, and giving one-half to his wife and the other half in trust for his son until he should arrive at the age of thirty years. After the birth of the second child and on the 26th day of October, 1910, he executed the will now in question, by which he directed the payment of his debts and

funeral expenses, and gave a legacy of $10,000 to his wife's sister, Mamie Felix, and left the residue to his executors in trust to pay the income to his widow until their "younger child" should arrive at the age of twenty-five years, provided his widow remained unmarried, and in the event of her remarriage the residue was to be divided and held in trust for his children until the younger reached the age of twenty-five years, when they were to take the principal and in the event of the death of one of the children before reaching the age of twenty-five years he gave a legacy of $10,000 to his wife and to her sister. It thus appears that the only provision made by the testator for the plaintiff was in his first will and a much smaller legacy in the codicil to the second will. Of course the validity of the former wills and codicil has not been passed upon; but so far as appears they were the free acts of a competent testator and the uncontroverted evidence clearly shows this with respect to the codicil. The last will leaving substantially all his property to his wife and children has by the verdict been annulled evidently owing to his failure to continue some provision for the grandson.

The evidence tends to show that when the first will was made the testator was worth about $300,000, and that before making the last will he had transferred and assigned to his wife property of the value in the aggregate of $145,000 and then owned mortgages worth about $110,000 and stocks and bonds estimated at $50,000. A month prior to the execution of the last will the testator discontinued the services of Judge Clinch, who had been his attorney for about twenty years and employed one Elder, a member of the bar, who had been associated with Judge Clinch for a period of years prior to July of that year, to draw the last will. The cause assigned by the testator for making the fourth will was the birth of the second child. It was arranged that Elder should call at the decedent's house, which he did on the seventh day of October. At that time the decedent delivered to him a deed of the Twenty-third street property to his wife, which had been drawn by Judge Clinch, to have the same recorded; but nothing was said about the will. On the thirteenth of October there was another interview between Elder and the testator at the same place. The decedent had organized a

corporation known as the North American Realty Company, and he then owned and held all of the capital stock, excepting one share, issued to his sister-in-law, evidently to qualify her as a director. The company held the title to various parcels of real estate owned by the testator, and he held mortgages thereon. At this interview he announced his intention of transferring the property held by the company to his wife, and of satisfying the mortgages. Elder accordingly prepared the deeds and on the twenty-fourth of October brought them to the testator for execution. The deeds were signed by him that day, as president of the company. Elder also at the same time brought leases of the property to the testator for life to be executed by his wife, but she was not home. At the former interview with Elder the testator had stated, in effect, that his wife was to have all of his property ultimately, and that he desired to " Clean it all up " by transferring it to her, and accordingly Elder also brought satisfaction pieces of various mortgages, to be executed by the testator and an assignment of a mortgage to his wife. The testator was expecting one Schrag, a friend of his engaged in the real estate business, and before executing the satisfaction pieces he suggested awaiting Schrag's arrival on the ground that he desired the latter's advice as to whether he was taking the proper action. Schrag arrived shortly thereafter, and on looking over the papers suggested that the testator should make some provision for his children inasmuch as he had given so largely to his wife, to which the testator replied, " That is what I am doing this for," and said that he would make a will and that he had stocks and bonds of the value of $50,000; but upon Schrag's suggestion that that was not sufficient, he determined not to satisfy the mortgages. Much is attempted to be made of this circumstance, and it is claimed that the declaration of the testator that he was transferring the property to his wife with a view to protecting his children indicates that he was incompetent. Manifestly there is no force in this argument. It is entirely consistent with an intelligent judgment that he had sufficient confidence in his wife that she would look after her own and his children. Nor is incompetence shown because he yielded to the persistent suggestions of Schrag and refrained from satisfying the

First Department, June, 1917.       [Vol. 178.

mortgages. At most that merely indicates that on the urgent request of his friend he deemed it wise to leave more of his property to his children thereby leaving them less dependent upon their mother.

The testator then gave directions with respect to the preparation of the will in question and directed that his wife and her sister be the executrices, but on the suggestion of Elder that he name an outsider — as he had named Judge Clinch in a previous will — the testator directed that Schrag be included as an executor and that it be provided that Elder be employed as attorney for the estate. Elder prepared a rough draft of the will and brought it to testator's house and it was read over and certain changes were made at the suggestion of the testator, and it was agreed as to who should be the witnesses; but the testator said he would not execute the will until his wife, who was out of town, knew about it, and it was arranged that Elder and Schrag and the latter's nephew, who was to be a witness, should call the next day. They called pursuant to the arrangement and at that time the testator's wife was home, and Elder, in the presence of the testator, informed her that owing to the birth of the second child the testator intended to make another will. She said that she did not see any necessity for it. He thereupon read the will to her, and she asked with respect to the change in the provision in the event of her remarriage, saying, " Then I don't get anything if I marry again," whereupon Elder drew her attention to the fact that considerable property had been transferred to her outright, and thereupon the testator, addressing her, said, " Are you satisfied? " to which she replied, " Yes; I suppose so; if you want to do it, it is all right," and he said, " Well, I want you to be satisfied," and she answered, " Yes; I am satisfied, and you can sign it if you want to." Elder then placed the will upon a table and the testator executed it. After the will was executed Elder stated to the wife of the testator that the latter desired to transfer certain real estate to her if she would give back life leases on the property and execute a mortgage on the Twenty-third street property in the sum of $25,000 for which he would transfer to her mortgages referred to as the Sound Realty Company mortgages. She acquiesced and the papers were accordingly

executed. So far as appears, this was the condition of the
testator's financial affairs at the time of his death. He held
leases for life on the real property thus conveyed to his wife,
and stocks and bonds the estimated value of which he gave as
$50,000. He also owned a first mortgage on the Twenty-third
street property in the sum of $35,000 and said mortgage for
$25,000.

He appears to have enjoyed unusually good health for one of
his age. Beginning with the year 1904 he experienced difficulty
with his heart owing to a leak of one of the valves, which
continued until his death. That was one of the causes of
death specified in the death certificate, and according to the
evidence the other causes of death were related thereto. From
this condition of his· heart he occasionally suffered attacks
which were very severe and exhaustive, involving great
difficulty in breathing, and at one time he fell in a semi-
unconscious condition and remained ill for some days. There
is also evidence that his kidneys were affected and that he
suffered from hardening of the arteries. In 1907 he sustained
a fracture of the arm and in 1908 he had pleurisy. He was
then confined to his house for some months, and in July,
1909, on the advice of his physician, he went to Bad Nauheim
to take the baths for his heart. He returned in September
apparently improved, but suffered an attack shortly there-
after. Three days before the execution of the will a step-
ladder on which he was standing in his house, slipped, and he
fell therefrom and sustained a cut on the scalp about one and
one-half inches in length. His family physician was called
in then. He testified that there was no fracture of the skull
and no unconsciousness resulted. Two days after the execu-
tion of the will he had a severe convulsion, which the doctor
testified was not due to the fall five days before, but to cerebro
embolism, which indicated that some substance had been
carried from the leaky valve in the heart to the brain where it
lodged causing an accumulation of blood, and pressure. The
testator at this time was confined to his house until the early
part of December, when he was again able to be up and
around, but required some assistance in walking. This was
his condition when he went to Florida on the fourteenth of
January following. On his arrival in Florida he was able to

be about alone for the first day or two but he then became seriously ill and a physician was called; and one Thornton, a nurse, was placed in attendance and remained with testator until his death. The family physician of the testator in New York testified that owing to the condition of the testator's heart he advised against his going out alone prior to the execution of the will, but his testimony shows that in his opinion the testator's mental faculties were unimpaired. There is evidence tending to show that the testator was feeble and that he failed promptly to recognize old friends and even to do so for some time after having been reminded of their names.

The court left the issues with respect to the competency of the testator and undue influence to the jury, and they rendered a general verdict. Unless mere age alone renders one incompetent to make a will there was no evidence upon which the impeachment of this will on the ground of incompetency can be sustained. There is no evidence that the condition of the testator's heart, which was the principal ailment from which he was suffering, affected his mentality, nor is there any evidence that his mind was materially affected by the feebleness of his body. The mere fact that his eyes, or his mental faculties, were without the alacrity of youth in recognizing relatives, friends and acquaintances, is not evidence of incapacity to make a will. Very many verbal declarations made by the testator from time to time before the will was executed and down to his death were received. They were for the most part mere declarations by him with respect to the attitude of his wife and her relatives and their supervision over him and his financial affairs. They did not tend to show incompetency at the time the will was made. It was, therefore, error to submit that issue to the jury. Such statements were competent as showing the testator's state of mind with respect to competency if not too remote, and toward his family and plaintiff; but as narratives they were hearsay and, therefore, incompetent evidence as to whether undue influence was exerted. (*Marx* v. *McGlynn*, 88 N. Y. 358, 375; *Matter of Green*, 67 Hun, 527, 542; *Waterman* v. *Whitney*, 11 N. Y. 157, 164; *Chambers* v. *Chambers*, 61 App. Div. 299, 308; *Shailer* v. *Bumstead*, 99

Mass. 112.) They were not, however, properly limited either when received or in the charge. The arguments of counsel for respondent on the issue of undue influence are for the most part predicated on incompetent evidence and facts and circumstances giving rise merely to suspicion. Thornton, the nurse, called by plaintiff, was permitted to testify over objection on the ground of incompetency, and exception duly taken by defendants, that about four hours before death the testator came out of the delirium in which he had been for some days, and asked for Elder, Schrag and the plaintiff, and was informed that he could not see them as they were in New York and he was in Florida, and on being asked whether he wished to see his wife and sister-in-law, replied that he did not, that " all they wanted was his money and it was money all the while," and asked that the door be locked, which was done; that testator was then propped up in bed so that he could see where he was, and that he then said he " wanted to fix things right for his grandson; " that he had not seen his grandson for some time and had not been allowed to see him; that he cried and carried on for some two hours, stating that everything was wrong, and that he had had an operation when he was about sixty-five and " had been a different man since," and " seemed to lose all vitality after that." This evidence was offered and received generally. In the charge the jury were instructed that it bore on both issues. That testimony was most prejudicial to defendants. In the circumstances the jury were justified in believing that it was direct competent evidence that the testator had been unduly influenced by his wife and her sister. Manifestly the declarations were not proof of the facts and it is quite evident that the state of the testator's mind a few hours before death, as shown by what he said on rousing from a comatose condition in which he had been for some days, shed no light on the state of his mind at the time of the execution of the will three months before. (See *Smith* v. *Keller*, 205 N. Y. 39; *Shailer* v. *Bumstead, supra,* 126, 127, 130.) In *Smith* v. *Keller* (*supra*) the Court of Appeals, in discussing this point, say: " Statements made by a testator tending to impeach a will previously made are too unreliable to be admissible as a basis for setting aside an instrument made under the formalities required by statute.

First Department, June, 1917. [Vol. 178.

Such statements may be made for the express purpose of deception, or to satisfy impertinent curiosity and importunity or to express agreement with the suggestions of the questioner and thus satisfy the one to whom the declaration is made, or they may spring from a semi-morbid condition that in no way reflects the condition of mind or the purpose of the testator at the time the will was actually executed."

This same witness was permitted to testify over objections on the ground of incompetency and exceptions duly taken, to declarations alleged to have been made to him by the testator's wife while in Florida to the effect that decedent " talked foolishly, acted foolish since he had had this fall; * * * he acted foolish and said foolish things; * * * he had been foolish and talked foolish since the fall." That evidence was received as original evidence of the facts and was in no manner limited. Manifestly it was incompetent for that purpose because the declarations were made long subsequent to the execution of the will and the rights of other parties could not be impaired by her admissions affecting the validity of the will which must stand or fall as a whole. (*Matter of Myer*, 184 N. Y. 54; *Matter of Kennedy*, 167 id. 176.) The only possible theory upon which such evidence would be admissible would be to impeach the widow as a witness after a proper foundation had been laid therefor by asking her if she had not so stated, but although the widow was a witness, no such foundation was laid, and the evidence was not so limited, even after she was recalled and denied it. Like damaging evidence was received in the testimony of one Theiss over objection and exception duly taken with respect to its competency, and he was permitted to testify to declarations claimed to have been made in his presence by the wife of the testator to the effect that the doctors had ordered her to take him south and that she wished she could leave him there as she had obtained all his property.

Testimony was given by Judge Clinch, who had been the legal adviser of the testator, and had probably drawn all of the wills excepting the last, and who was called as a witness by the plaintiff, and was permitted to testify to declarations made to him by the testator tending to show that the latter did not feel free to state in the presence of his wife and sister-

in-law his views with respect to the disposition of his property. That testimony was received over objection and exception duly taken which present the question as to whether the evidence was competent under section 829 of the Code of Civil Procedure, the witness being a legatee under a prior apparently valid will of the testator with, however, another will intervening. Like testimony of another witness similarly situated was received. That is an interesting question in view of the authorities which hold generally that a legatee under a prior will is interested in the contest over the probate of a later will (*Pringle* v. *Burroughs,* 100 App. Div. 366; affd., 185 N. Y. 375; *Matter of Smith,* 95 id. 516; *Matter of Jeffrey,* 129 App. Div. 791); but in all of those cases the witness derived his interest under an immediately preceding will. Here, however, the interest of the witnesses would not necessarily attach if the will now under consideration were invalid, but only in the event that the third will was also invalid. Subsequent to the decisions cited, the Court of Appeals, in *Franklin* v. *Kidd* (219 N. Y. 409), which, however, was not a will case, declared generally that the interest of a witness, to render him incompetent, must be such that it will be directly affected by the decision of the issue on which he is called to testify. We do not deem it necessary to decide whether that testimony was competent for we are of opinion that it does not tend to show the exercise of undue influence upon the testator with respect to the will under consideration.

Counsel for appellants, evidently in the expectation of showing that the widow and sister-in-law made no improper request with respect to having the testator advised concerning the disposition of his property, asked Judge Clinch on cross-examination whether the wife or sister-in-law ever requested him to give advice with respect to the testator's property which he deemed improper or felt compelled to refuse or attempted to influence him, and he answered in the affirmative. The matter was then dropped and it does not appear what advice they requested or what influence they attempted to exert. There is nothing to show that such advice or influence was with respect to the making of the will in question, or with respect to any disposition of the property of the testator now in

question. There is other evidence tending to show that the wife of the testator was somewhat active in attempting to alienate him from the plaintiff; but there is no competent evidence tending to show that there was any undue influence brought to bear upon the testator in procuring the execution of this will. There is here no presumption from the nature of the will and the existence of opportunity and interest that undue influence was exerted, for with the exception of the legacy of $10,000 to the testator's sister-in-law, who lived with him, he left his property to his wife and children. (See *Marx* v. *McGlynn*, 88 N. Y. 357, 371.) We are of opinion, therefore, that the evidence was insufficient to require the submission of the case to the jury and that the court erred in denying appellants' motion for a dismissal of the complaint.

It follows that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SCOTT, DAVIS and SHEARN, JJ., concurred.

Judgment and order reversed with costs, and complaint dismissed, with costs.