---

(43 App. Div. 241.)

### In re CORNELL'S WILL.

(Supreme Court, Appellate Division, Third Department.    September 6, 1899.)

1. WILLS—UNDUE INFLUENCE—EVIDENCE.

A testator, 61 years old, in poor health, and addicted to the use of opium, but possessing testamentary capacity, executed his will four years prior to his death, devising all his property (about $280,000, inherited from an uncle about a month previous) to his medical adviser and friend, who afterwards gave up his practice to become testator's private secretary and attendant, receiving therefor a large salary. The testator's sole heir and next of kin was a half-sister, about 25 years younger. They had not lived together, as members of the same family, since she was 5 years old, and there was no intimate personal association between them. There was no evidence showing that the beneficiary sought to influence the decedent to make a will in his favor, but he expected some provision would be made for him. The will was drawn by a reputable attorney, from instructions given by the decedent himself, and executed at the attorney's office, in the absence of the beneficiary, who was also named

sole executor. *Held*, that undue influence was not shown, and the will should be admitted to probate.

2. SAME—BENEFICIARY'S KNOWLEDGE OF TESTATOR'S INTENTION.
Evidence of knowledge by the beneficiary of the testator's intention to make a will containing provisions in his favor is of but little weight on a question of undue influence.

3. SAME—TRANSACTIONS SUBSEQUENT TO MAKING WILL.
Evidence of transactions subsequent to the making of a will, showing that the testator was greatly under the influence of the beneficiary, who was his medical adviser, is not of itself sufficient to show that the will was procured by fraud and undue influence.

4. SAME—PHYSICIAN AS BENEFICIARY.
The mere fact the sole beneficiary under a will was the testator's medical adviser raises no presumption of undue influence, especially where the beneficiary was not present at the execution of the will, which was drawn from instructions given by the testator himself.

Appeal from surrogate's court, Ulster county.

Petition by Charles W. Crispell for the probate of the last will and testament of Charles W. Cornell, deceased. Appeal from decree of the surrogate's court admitting the will to probate. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Howard Chipp and John J. Linson, for appellant.

V. B. Van Wagonen (J. Newton Fiero, of counsel), for respondent.

MERWIN, J. The instrument admitted to probate as being the last will and testament of Charles W. Cornell, deceased, is dated June 1, 1894. Mr. Cornell died on the 9th May, 1898, then being of the age of about 65 years. By the will, all the property of the decedent is given to the proponent, Charles W. Crispell, who is also named as executor. The decedent left no wife or children, and his sole heir and next of kin was a half-sister, the daughter of his father by a second marriage. She filed objections to the proof of the will, the chief grounds of contest being that the decedent was not competent to make a will, and that the instrument presented for proof was procured by undue influence. The will was drawn by a reputable attorney, from instructions given by the decedent himself, and was executed at the office of the attorney, with all the formalities required by law. The beneficiary under the will was not present. From the testimony of the subscribing witnesses, one of whom was the attorney who drew the will, as well as from the other evidence in the case, it is, I think, quite clear that the decedent at the time of the execution of the instrument in question was competent to make a will. True, he had been in poor health for some years, and was addicted to the use of opium to a considerable extent, but there was no such impairment of his intellect as destroyed his testamentary capacity. The proof is that when he executed the will he acted intelligently, and appeared to be of sound mind. Peck v. Cary, 27 N. Y. 9.

The main question in the case is on the subject of undue influence. The burden of proving this is on the party who makes the allegation. In re Martin's Will, 98 N. Y. 193. To invalidate a will on this ground, there must be affirmative evidence of the facts from which such influence is to be inferred. It is not sufficient to show that a

party benefited by a will had the motive and opportunity to exert such influence. There must be evidence that he did exert it. Cudney v. Cudney, 68 N. Y. 148. In Society v. Loveridge, 70 N. Y. 387, 394, it was said that, in order to avoid a will upon any such ground, "it must be shown that the influence exercised amounted to a moral coercion, which restrained independent action, and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse, or too weak to resist. It must not be the promptings of affection, the desire of gratifying the wishes of another, the ties of attachment arising from consanguinity, or the memory of kind acts and friendly offices, but a coercion produced by importunity, or by a silent, resistless power, which the strong will often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear." In Re Snelling, 136 N. Y. 515, 32 N. E. 1006, it is said that "what the law terms 'undue influence' must be such as overpowers the will of a testator, and subjects it to the will and control of another. It is not established by proof simply tending to show that the testator, acting from motives of affection or gratitude, gave his property to strangers to his blood."

The beneficiary, Dr. Crispell, had been the medical adviser of the decedent since July, 1892, at which time he had been called to attend the decedent upon a sudden illness. After that, and prior to the will, they had become very friendly; the decedent evidently reposing great confidence in the doctor, both as a physician and as a friend. He had, as the decedent thought, with some reason, been of signal service to him as a physician, and had also been kind to him at a time when his friends were not numerous, and when he had no property to remunerate service or attract friendship. Prior to June, 1894, the means of the decedent were quite limited. He had not, for some time, been engaged in business, and his support was derived from the income of a fund held in trust under the provisions of the will of his grandfather on his mother's side. His father had died in 1866, and by will given to his second wife and her daughter—the contestant here—all his property. This was with the assent of the son, Charles W., it being then understood that the son would be provided for by his relations on his mother's side. On the 26th May, 1894, W. W. Cornell, an uncle of the decedent on his mother's side, died intestate, leaving a large estate, supposed to be a million and upwards, of which the decedent, as one of the next of kin, was entitled to one-fourth. He in fact afterwards received therefrom about $280,000. The decedent was 25 years older than his half-sister, the contestant. They had never lived together, as members of the same family, at least, after the sister was five years old. There had been occasional correspondence. They did not often meet. There was no intimate personal association. The sister had married in 1886, and resided in New York or Brooklyn, and had kept house in Brooklyn since 1890. The decedent had not visited her. The will was made a few days after the death of the uncle, and upon the realization by the decedent of the fact that he had become the owner of a large estate. There is

practically no evidence that before the making of the will the beneficiary did or said anything to the decedent to influence him to make a will in his favor. The attorney who drew the will testifies that before the will was drawn the beneficiary told him that he thought Mr. Cornell would want him to prepare a will, and that he would probably wish to do something for him in the will, but did not intimate how much he expected Mr. Cornell to do for him. Knowledge by the beneficiary of an intention by the decedent to make a will, and to make some provision for him, is of but little weight on the question at issue. A large amount of evidence was given as to subsequent transactions, up to December, 1897, between the decedent and Dr. Crispell, showing, as the contestant claimed, that the decedent was greatly under the influence of Dr. Crispell, and was improperly induced by him to make large gifts of his property to the doctor and his friends. The question whether those transactions were valid is not for determination here. Assume that the evidence as to those transactions shows that the decedent was greatly under the influence of the doctor, and that in some cases unjustifiable results were accomplished, it would not, without further proof, follow that the act of the decedent on June 1, 1894, was induced by fraud, and was not a voluntary act. The decedent, at the time of making the will, stated to the attorney that he had made, or was expecting to make, some arrangement with Dr. Crispell, by which the doctor was to give up his practice, and become his secretary, and devote his time and attention more especially to him. This arrangement was afterwards consummated, the doctor receiving a seemingly large salary. The decedent had need of considerable care from a physician. It may be he did not need a secretary. He had a right, however, to employ one, if he chose so to do. The care of a large estate came suddenly upon him. He had been for a long time in straitened financial circumstances. There was no one that, as he thought, had any special claims upon his bounty. Naturally, at his age and state of health, he would take such course in the enjoyment of his good fortune as would give him the least amount of trouble, and still give him such comfort and pleasure as he was able to enjoy.

The failure to make any provision for his sister is not without explanation. The estate which he was to dispose of did not come to him from any relatives of the sister. She had no claims on that ground. His father, by his will, had given all his property to the sister and her mother, and this circumstance had been dwelt upon by the decedent. There had been no estrangement between the decedent and the sister, but evidently there was no warm feeling on the part of the decedent.

It is suggested that the fact, simply, that the beneficiary was the medical adviser of the decedent, raises a presumption of undue influence. That, I think, is not the law, at least in a case like the present, where the beneficiary is not present at the transaction, and the will is drawn from instructions given by the testator himself. In re Smith's Will, 95 N. Y. 516; In re Spratt's Will, 4 App. Div. 1, 5, 38 N. Y. Supp. 329, and cases cited. The character of the will is one of the circumstances to be considered, and the weight to be given

to it depends upon the situation of each particular case. If a competent testator well understands what he is doing, and acts freely, there is no undue influence. "A testator has a right to dispose of his estate in any way he may deem best. He is not required to make an equitable will, and he may, if he chooses, exclude his children, or divide his estate unequally. The question in all such cases is, was the will the free act of a competent testator?" Horn v. Pullman, 72 N. Y. 269, 276.

A careful consideration of the voluminous evidence in this case leads, I think, to the conclusion that the charge of undue influence is not made out, within the established rule on that subject. It was not shown, nor do the circumstances warrant the inference, that the will, as made, was not his free, voluntary act.

Our attention is called to some exceptions to rulings at the trial. These we have examined, but find no good reason for reversal. The decree of the surrogate's court should be affirmed.

Decree affirmed, with costs. All concur.