In re DUFFY'S WILL.

(Supreme Court, Appellate Division, Second Department. June 18, 1908.)

1. WILLS—EXECUTION—ATTESTATION CLAUSE—EFFECT.
    A due attestation clause in a will proven to have been signed by the witnesses may alone suffice to prove the factum of the will, where the witnesses have forgotten the circumstances of its execution.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 705.]

2. SAME—PROBATE—EVIDENCE.
    Evidence held to show the due execution of a will, the testamentary capacity of testator, and the absence of undue influence, authorizing the probate thereof, though offered for probate 30 years after its alleged execution and death of testator.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 697–728.]

3. SAME—TESTAMENTARY CAPACITY—AGE OF TESTATOR.
    The mere fact that a testator is old and infirm does not justify the rejection of his will.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 94.]

4. SAME—DELAY IN PROBATE OF WILL—EVIDENCE.

Evidence *held* to satisfactorily explain the delay of 30 years in offering a will to probate, and not adding to the burden imposed on the proponent, though such delay may, in some cases arouse suspicion, and add to the burden of proof imposed on proponent. .

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 697–725.]

5. SAME.

There is neither a rule of law nor a statute in the state which pre-. vents the probate of a will, no matter how great the lapse of time from the death of testator.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 598–607.]

Appeal from Surrogate's Court, Kings County.

Application for the probate of the will of Owen Duffy, deceased. From a decree of the Surrogate's Court (51 Misc. Rep. 543, 101 N. Y. Supp. 974) denying probate of the will, Margaret Duffy, proponent, appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

P. J. Rooney, for appellant.

Samuel H. Evins (Francis G. Caffey and John P. East, on the brief), for respondents.

MILLER, J. This is an appeal from a decree of the Surrogate's Court denying probate to an instrument propounded as the last will and testament of Owen Duffy, who died August 11, 1876, leaving him surviving five daughters, Margaret, Elizabeth, Ellen, Susan, and Mary, and two sons, Edward and Patrick. Said instrument was executed on the 5th day of April, 1876. The following is its most important provision:

"2nd: I give, devise and bequeath to my daughters, Margaret and Ellen, and to my sons, Edward and Patrick, all my estate, real and personal, to have and to hold the same during the lives of the said Margaret and Patrick, and after the death of the said Margaret and Patrick it is my will and I hereby direct that all my said property shall go and belong to all my children who may then be living, share and share alike."

It purports to have been executed in due form, and contains the usual attestation clause. Mr. Hendrickson, the lawyer who drew the will and one of the subscribing witnesses, testified to all of the requisites of due execution, and was corroborated by the other subscribing witness, Mr. Lawrence, who recalled that the testator made his mark by putting his hand on the pen while Mr. Hendrickson guided it; that he said, "Yes," or nodded assent to the question whether he declared the instrument to be his will; that he requested said witness to sign as a witness; and that the witness and Mr. Hendrickson both signed after the testator had signed, and made the declaration and request as aforesaid. Mr. Lawrence testified:

"He was not under a particle of restraint of any kind when he signed this paper that I could see. * * * I do not know what was his condition of mind then. He seemed to be all right for an old man. He was not as bright as a young man at that time; but he seemed to be bright enough to me. I had known him for a long time at that time, but I would not say it was 20 years, but a long time. We lived as next door neighbors for a long while."

Mr. Hendrickson testified:

"The testator's condition with respect to his mind and memory as I observed it was perfectly rational. I had some conversation with him. He was not under any restraint of any kind in any way, shape, or form, as far as I observed."

The will was not offered for probate until 30 years after the death of the testator, and the learned surrogate thought that it was impossible for the subscribing witnesses to remember the circumstances of the execution of the will after the lapse of so many years. Though mindful of the rule that a due attestation clause proven to have been signed by the witnesses might alone suffice to prove the factum of the will where the witnesses have forgotten the circumstances of its execution, he concluded that the witnesses did not recall the transaction, inasmuch as they testified that they did, and that, therefore, all the evidence respecting the execution of the will should be rejected. Neither of the subscribing witnesses appeared to have the slightest interest in the probate of this will. We find nothing in the surrounding circumstances or in their testimony to discredit them, and we do not share the view of the learned surrogate that they exhibited such féats of memory as to be unworthy of belief, but, on the contrary, think that their testimony in connection with the attestation clause itself leaves no room for doubt that all the formalities requisite for the due execution of a will were complied with in this case. It is plain that the evidence was ample to prove the factum of the will. The contestants offered no evidence. It follows that the instrument should have been admitted to probate unless the circumstances surrounding its execution, together with the fact of the delay in offering it for probate, imposed a burden on the proponent to show testamentary capacity, understanding of the instrument, and freedom from restraint on the part of the testator, which was not met.

Mr. Hendrickson testified that he received all of the instructions for the preparation of the will from the testator, that he first prepared a rough draft, read it to the testator, then copied it in the form in which it was executed and again read it to him, and after it was executed folded it up and left it with him. The will is short and easily understood. The case is not at all like Rollwagen v. Rollwagen, 63 N. Y. 504, and like cases; and I think that the proof is ample to show that the testator had an intelligent understanding of the provisions of the will. The testator's wife had been dead some years, and his oldest daughter, Margaret, had had the management of his household. He appointed her executrix. Ellen and Susan were away from home engaged in some business. Elizabeth was present when the will was executed, but was not given anything except upon the contingency of her surviving Margaret and Patrick. There is no suggestion that any one was in a position to exercise undue influence over the testator except Margaret, and the will contains sufficient internal evidence that she did not do so. It appears that the testator was ill and confined to his bed when the will was drawn, and it is evident that he and the members of his family did not expect that he would survive, but it appears that he recover-

ed from such illness and was again about. He was 98 years of age when he died. Two witnesses who had known him for many years prior to his death testified to observing him about frequently up to the time of his death, and it is evident from their testimony that, while he was very old and feeble, he retained sufficient control of his mental faculties to make a will. The mere fact that a testator is old and infirm does not justify the rejection of his will, and in this case the circumstances surrounding the making of the will, together with the internal evidence furnished by the will itself, dispel any suggestion of undue influence or want of testamentary capacity.

When the circumstances of the delay in offering the will for probate are understood, they cease to have any force. It appears that the will, with other papers belonging to the testator's family, was kept in a box which was in the possession of Elizabeth until her death in 1897, when it passed into the possession of Margaret. Margaret testified that the will was not offered for probate, for the reason that her brothers did not wish to bother about it. After the death of the father the family continued to live in harmony, with Margaret as the head of the household, managing affairs as she liked, and no necessity of offering the will for probate was suggested until a proposed purchaser requested that it be done. Edward died in 1888, and Patrick in 1903. Neither Edward, Patrick, nor Elizabeth left descendants. Mary died in 1905, leaving two children, the contestants in this case; and it is evident that harmony in this family was then for the first time broken. The only children of the testator now surviving are Margaret, Ellen, and Susan. Margaret is the proponent of the will. Ellen and Susan have signed a consent that it be probated.

Under the circumstances disclosed in this case, we think the delay in offering the will for probate is fully explained. While such delay might in some cases arouse suspicion and add to the burden imposed upon the proponents, as explained in this case, it ceases to be of importance. It must be said to the credit of these brothers and sisters that they did not even deem it necessary to have their father's will probated, but respected it for 30 years. There is no rule of law and no statute in this state which prevents the probate of a will, no matter how great the lapse of time from the death of the testator. It was held by the Supreme Judicial Court of Massachusetts that a will should be probated 63 years after the death of the testatrix, and that the fact that she made a will was some evidence of her legal capacity. Haddock v. Boston & Maine R. R. Co., 146 Mass. 155, 15 N. E. 495, 4 Am. St. Rep. 295.

The decree should be reversed.

Decree of the Surrogate's Court of Kings county reversed, and issues ordered to be tried by a jury, with costs of the appeal to abide the event of the new trial, payable out of the estate. All concur.