In the Matter of the Probate of the Alleged Last Will and Testament of JAMES B. RUNDLES, Deceased.

LOUISE B. LAIRD, Executrix and Legatee of JAMES B. RUNDLES, Deceased, and Others, Appellants; MARY W. SCHNECK, Respondent.

Fourth Department, May 5, 1926.

**Wills — execution — undue influence — verdict of jury in favor of contestant on question of undue influence is against evidence.**

In a proceeding to probate a will, the verdict of the jury in favor of the contestant that the will was the result of undue influence upon the testator is against the evidence, for while it appears that the will offered for probate, which was executed a short time prior to the death of the testator, changed the legacies in a prior will by omitting a legacy to the contestant and increasing the legacies to certain

relatives and by making a legacy to a comparative stranger, there is no evidence that the stranger who benefited under the provisions of the will offered for probate exercised an influence of such potency as to overcome the power of the testator to act upon his own volition. The only evidence upon which it is sought to sustain the verdict is the legacy to the comparative stranger, and the fact that she drew the will under the direction of the testator and was present and superintended its execution.

APPEAL by Louise B. Laird and others from a decree of the Surrogate's Court of the county of Cayuga, entered in the office of said Surrogate's Court on the 12th day of June, 1925, upon the verdict of a jury, and also from an order entered in said Surrogate's Court on the 9th day of June, 1925, denying appellants' motion for a new trial made upon the minutes.

*Frank S. Coburn* and *M. V. Austin* [*Oliver D. Burden* of counsel], for the appellants.

*William J. Maloney* [*Amasa J. Parker* of counsel], for the respondent.

TAYLOR, J. James B. Rundles died suddenly in the city of Auburn on October 29, 1924. He was then about seventy-two years of age. He made a will dated September 8, 1921, and a second will dated September 11, 1924. The latter will was duly offered for probate in the Surrogate's Court of Cayuga county and a decree denying probate was entered upon the verdict of a jury in Surrogate's Court. The jury found that the will was executed in accordance with the statutory requirements and that the testator was of sound mind and competent to make a will, but that he was unduly influenced in its execution. Louise B. Laird, executrix and legatee, and others have appealed.

The testator's nearest of kin was a niece, Mary W. Schneck, who filed objections to the probate of the will. Daisy E. Alexander, the adopted daughter of a deceased brother, also filed objections; but the proceeding was dismissed as to her, since she was not one of decedent's next of kin. (*Hopkins* v. *Hopkins*, 202 App. Div. 606; affd., 236 N. Y. 545.)

Rundles had lived in the vicinity of Auburn practically all his life, where he had been engaged in farming down to the 1st day of April, 1921. On that day he conveyed his farm to the said Daisy E. Alexander and her husband, and took back a purchase-money mortgage. Thereafter he continued to live with the Alexanders for about five and one-half months, which were unhappy for all concerned. In the month of September, 1921, he left the Alexanders.

In his first will decedent left Daisy Alexander $200 only; Mary

W. Schneck $4,000; his cousins, Della Pierce and Effie Pierce of Kalamazoo, Mich., and Eleanor D. Alexander of Philadelphia, $2,000 each, and his residuary estate to certain cousins in equal shares.

In the second will decedent left Della Pierce and Effie Pierce $5,000 each (an increase of $3,000 each); to Louise B. Laird, Lois Shoemaker and Corey Mosher (whose names did not appear in the first will) $5,000 each; to three formerly named residuary legatees the following sums: Herman Burnham and Ida Jacobs, $5,000 each, and Fannie Burnham $2,000; to Mary W. Schneck and Daisy Alexander nothing; and the residuary estate to Louise B. Laird.

Shortly after the making of the first will Rundles visited some of his relatives in California and Michigan, returning in July, 1922. He then lived again with the Alexanders some three months. From there he lived in boarding and rooming houses until the time of his death. He had invested his money largely in bonds and mortgages on real estate under the direction of M. V. Austin, who for many years had been his attorney, and at the time of his death his estate amounted to $41,944.

There was abundant evidence to support the finding of the jury that the will in question was duly executed and that at the time of its execution the testator was of sound mind and memory and capable of making a will. The two subscribing witnesses were sworn and testified that all of the formalities of the statute (Decedent Estate Law, § 21) were observed. The question of testamentary capacity was the real issue litigated upon the trial. Many witnesses were sworn on both sides. One of the subscribing witnesses testified that the decedent at the time of making the will appeared to be of sound mind, memory and understanding; the other that the mental condition of Rundles at the time he signed the will did not impress her especially one way or the other. Two physicians who had treated the decedent professionally at or about the time of the execution of the will testified that in their opinion he was of sound mind. Many lay witnesses testified to acts and conversations of the decedent, and that such acts and conversations impressed them at the time as being irrational. This testimony presented an issue of fact for the jury, which was resolved in favor of the proponents.

The issue of undue influence should never have been submitted to the jury. No testimony as to facts warranting such a finding was given, and the contestant must rest her case upon circumstances which were brought out upon the trial.

Two " unusual circumstances " which are said to have been

probably cogent with the jury are that testator gave $5,000 and a residue of possibly $10,000 to Mrs. Laird, a comparative stranger, and that he named the contestant as a beneficiary in the first will and not the second.

" The character of the provisions of a will may be considered in connection with other evidence in trying the question of undue influence, but is not in itself evidence of such influence. However partial or unjust a testator may seem to have been in his testamentary dispositions, if the instrument propounded is actually his will, effect must be given to it." (*Cudney* v. *Cudney*, 68 N. Y. 148, 152.)

The will in question gives legacies aggregating $32,000 to seven relatives and makes provision for Mrs. Laird, executrix therein named, to the extent of $5,000, together with such residue, if any, as might remain. All the evidence shows that Rundles was a good business man. He distributed nearly ninety per cent of his entire estate in specific legacies, viz., $37,000. He may have estimated that his estate might shrink somewhat before he died. In any event he desired to leave enough in the residue to pay his debts, funeral and administration expenses.

There is no testimony as to why the contestant, Mrs. Schneck, who received $4,000 under the first will, was cut off with nothing in the second will. But no reason is suggested why Mrs. Laird should have been instrumental in cutting Mrs. Schneck off, and the only undue influence hinted at in this trial is the alleged undue influence of Mrs. Laird. If it be claimed that Mrs. Laird cut off Mrs. Schneck in order to take that legacy for herself, what explanation is there of the fact that the will increases the legacies of Della and Effie Pierce $3,000 each and gives to decedent's cousins Lois Shoemaker and Corey Mosher $5,000 each? These latter legatees were not mentioned in the first will at all and there is no proof whatever that Mrs. Laird was in any way interested in them or in the Pierces.

The age of decedent and the claim that he had become " silly about women " are mentioned. Decedent was active all his life and was transacting business right down to the day of his death. Even if it be true that his conduct indicated at times an " abnormal condition," this is no proof of undue influence, and the jury have found that Rundles was entirely capable of making his own will. Silliness about women is perhaps somewhat prevalent among our lords of creation; and the extent of its grip upon any man rests largely in the eye of the beholder.

It is true that Mrs. Laird drafted the will in question and superintended its execution. There is nothing necessarily suspicious in

that circumstance. The courts have repeatedly held that undue influence will not be inferred from motive and opportunity. Neither do advice, argument nor persuasion furnish ground for avoiding a will. Influence at the time of making the will, so potent as to overcome the power of the testator to act upon his own volition, is necessary. (*Smith* v. *Keller*, 205 N. Y. 39.)

The decedent had been heard to remark that he did not want to have a lawyer draft his will. He had had a falling out with his lawyer shortly before the second will was executed. There is no evidence that Mrs. Laird knew the names or addresses of the other legatees or that she was in any way interested in them. Out of the total estate of approximately $41,000 these other legatees receive $32,000. Who but Rundles directed Mrs. Laird to insert their names in the will and who but Rundles fixed the amounts of their respective legacies? In view of the testator's unhappy experiences with the Alexanders, as disclosed by the testimony of Daisy Alexander, it is not difficult to see why she was cut off from his bounty. This was clearly the voluntary and deliberate act of the testator, for which Mrs. Laird could be in no way chargeable.

We find no direct evidence of pressure, coercion or undue influence, but certain circumstances alone are relied upon to create the inference. The burden of proof on this issue rests upon the contestant and does not shift. (*Matter of Kindberg*, 207 N. Y. 220; *Matter of Falabella*, 139 N. Y. Supp. 1003.)

The circumstances that Mrs. Laird was a beneficiary under the will, that she drafted the document and was present at and superintended its execution, and that by a former will the testator had left Mrs. Schneck a substantial legacy which was revoked by the subsequent will, perhaps require some explanation. (*Matter of Smith*, 95 N. Y. 516.) Still, the cases all hold that undue influence is a fact which must be proved by the contestant and cannot be assumed and inferred. (*Matter of Kindberg, supra; Loder* v. *Whelpley*, 111 N. Y. 239, 250.)

" The evidence is consistent with the hypothesis that the chief beneficiary induced the will by undue influence; but it does not support such inference, for the evidence is not inconsistent with the assumption that the will expressed the testator's own voluntary intent. An inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference." (*Matter of Ruef*, 180 App. Div. 203, 204; affd., 223 N. Y. 582.)

A motion was made by appellant for the direction of a verdict. Even had this not been done, we are empowered, in this case, to direct probate. (*Matter of Burnham*, 234 N. Y. 475.)

The verdict, in so far as it determines that the will in question was procured to be executed by fraud, deceit and undue influence, is set aside.   The decree of the surrogate of Cayuga county should be reversed and the matter remitted to the surrogate, with the direction to enter a decree admitting the will to probate.

HUBBS, P. J., CLARK, SEARS and CROUCH, JJ., concur.

Decree and order reversed on the law and facts with costs, and matter remitted to Surrogate's Court with directions to enter decree admitting the will to probate.