In the Matter of the Probate of the Will of PIETER GNIRREP, Deceased. ELIZABETH SPINHOVEN-STEENMAN, Appellant; DIRK STORM, Respondent.

Third Department, November 9, 1956.

Leonard H. Warren and Henry F. Werker for appellant.

Roy C. Moon and John C. Siegrist for respondent.

ZELLER, J.  In this contested probate proceeding, issues were framed by the Surrogate and ordered by him to be tried in County Court.  At the conclusion of the trial, the County Judge correctly determined that the will had been duly executed by the testator and had not been procured by fraud or deceit. The County Judge reserved decision on proponent's motion to dismiss the two remaining issues and submitted those issues to the jury.  The issues were: Was testator of sound and disposing mind and memory? and Was it (the execution of the instrument) procured by undue influence of the proponent or any other person?  The jury was unable to reach agreement on either issue and was discharged.  The County Judge thereafter granted the motion upon which he had reserved decision and directed a verdict in favor of proponent.

The material issue upon this appeal is whether there are questions of fact as to mental capacity or undue influence in the record which require determination by a jury.

Decedent and his wife were born in Holland and arrived in this country as very young people.  Until her death in 1953, decedent's wife was the dominant partner and managed all the financial and family affairs.  Decedent worked only sporadically and was largely dependent upon his wife for money.  After her death, decedent became frequently intoxicated and increasingly untidy in his appearance and habits.  On February 20, 1955, 10 days prior to his 80th birthday, he died.

For many years, decedent and his wife had been friends of proponent and his family.  Proponent visited decedent's home once or twice a week during the last year of his life and became familiar with the nature and extent of his property.  About a month before decedent's death, proponent arranged for an attorney to journey from Albany to decedent's home in West Coxsackie to discuss the drawing of a will.  While the discus-

sion was taking place and also when the attorney returned the next day for the purpose of having the instrument executed, the proponent was present in the home of decedent. The witnesses to the execution of the will were the attorney, who had had no prior acquaintance with decedent, and proponent's daughter-in-law. The document devises and bequeaths to proponent all decedent's real property and appoints him executor. It makes no mention of decedent's relatives, nieces or nephews, with whom he had little or no personal contact.

Although proponent presented proof that, at the time he executed the instrument purporting to be his will, decedent was of sound mind and disposing memory, there is evidence in the record from which it might fairly be inferred that decedent was not competent to make a will. The attorney who drew the will testified that decedent described to him his property, informed him who his relatives were and told him he wished his property to go to proponent. A bank teller, who loaned decedent some money a year before his death, said he was then capable of transacting business. A physician who last visited decedent in May, 1954, declared that he was rational. A friend of decedent's, who visited him in November, 1954, testified he was rational in his acts and speech. Similar testimony was given by proponent's son. On the other hand, a friend of long standing testified that decedent was senile, had delusions of persecution, failed to remember details about his family and relatives, and persistently got drunk. Another friend stated decedent falsely stated he and a married woman were lovers and accused the friend '' of taking her away from him '', that he would become angry and later cry, that he ate little and became so thin he could hardly walk or talk, that he was disheveled, and that he impressed the witness as being irrational. A neighbor testified that decedent walked into her house uninvited and inquired for his wife, who had been dead nine months, that in January, 1955, she saw him out of doors in cold weather dressed in pajamas, a suit coat and slippers and that his actions impressed her as irrational. Another neighbor testified that decedent used his driveway as a bathroom, '' commanded '' her to get his mail, got into her auto uninvited and sat there, and that his acts impressed her as irrational. An oil distributor told of finding decedent incoherent and irrational in November, 1954. The same month a bill collector found the electricity in decedent's house turned off, no food or heat in the house, and the place in general disorder. Another neighbor testified that decedent said it was winter and he did not need a refrigerator so he sold it. The evidence in

the record is of such a character that a finding could reasonably be drawn by a jury that decedent was not of sufficient mental capacity to execute a will. Therefore, the issue should be decided as one of fact. (*Hagan* v. *Sone,* 174 N. Y. 317, 323; *Matter of McCarthy,* 269 App. Div. 145, 154; *Matter of Barney,* 185 App. Div. 782, 794.)

In deciding the question of undue influence, the question of the strength of testator's mind is an important factor. (*Matter of Streb,* 247 App. Div. 556.) Undue influence may be proved by the contestants like any other fact. It may be proved by circumstantial evidence. In addition to the circumstances surrounding the execution of the will and the susceptibility of decedent to improper persuasion, there is evidence that about a year prior to his death proponent attempted to obtain a deed of decedent's real property; that decedent complained that his friends were looking for his money and that proponent had previously attempted to have an attorney draw a will for decedent. The issue of undue influence should also be decided as a question of fact.

The order should be reversed, upon the law and the facts, and a new trial ordered on the questions of mental capacity and undue influence, with costs to appellant payable from the estate.

BERGAN, J. P., COON, HALPERN and GIBSON, JJ., concur.

Order reversed, upon the law and the facts, and a new trial ordered on the questions of mental capacity and undue influence, with costs to appellant payable from the estate.