In the Matter of the Petition of CHARLES WOODS, Appellant, to Prove the Last Will and Testament of CAROLINA PREUSS, Late of the County of Kings, Deceased.

CARL DEHN and Others, Respondents.

Second Department, November 7, 1919.

**Will — probate — evidence not establishing undue influence — opportunity to exercise undue influence — concealment from testatrix that life beneficiary had already died — notification of next of kin of contents of will — intrusion upon deliberation of jurors.**

Appeal from a decree of the Surrogate's Court denying probate after a jury trial upon the issue of undue influence. It appeared that the testatrix was childless, and, having provided for her husband, at his death divided her estate equally between a sister-in-law and certain nephews and nieces with whom she was upon intimate terms and excluded, by a nominal bequest, other nephews who lived in another State and whom she had not seen for many years. Evidence *held* insufficient to sustain a finding of undue influence exercised by the legatees.

A finding of undue influence cannot be based solely upon proof of an opportunity to exercise it.

Where the will was executed at a time when the testatrix was seriously ill, no presumption that the testatrix would have made other disposition of her property arises from the fact that the death of the husband from the same affliction had already occurred when she signed the will, nor does such proof indicate fraud by imposition.

Nor can fraud be based upon the fact that one of the beneficiaries under the will, when notifying the other next of kin of the contents thereof, sent them a copy of an instrument making said disposition of the property but drawn in more formal legal terms.

No one should have access to a jury while in deliberation for any purpose save as directly ordered by the court.

New trial ordered upon the issue of undue influence.

APPEAL by the petitioner, Charles Woods, from a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 26th day of May, 1919, denying probate to the alleged will herein after a jury trial.

An appeal is also taken from the order of said Surrogate's Court entered in the office thereof on the same day, denying petitioner's motion for a new trial.

*Charles Fischer [Edward A. Kole* and *Harry L. Lewine* with him on the brief], for the appellant.

*Fred L. Gross,* for the respondents.

JENKS, P. J.:

The jury answered that a competent testator duly executed the will but under undue influence. I think that the proof did not justify finding that the will was not the act of the testator alone. I need not again discuss the rules of proof stated frequently and recently by this court. (*Matter of Powers*, 176 App. Div. 455; *Matter of Fleischmann*, Id. 785; *Matter of Ruef*, 180 id. 203; affd., 223 N. Y. 582.)

The testator was childless. The scheme of the will is natural. It provided first for the husband, and in the event of his death before the testator it divided the estate equally between a sister-in-law and certain nephews and a niece. The next of kin and heirs at law were nephews and this niece. There were four nephews who were cut off with ten dollars apiece. I fear that frequently in such cases jurors mistake their functions as those of an ultimate testator, and I surmise that in this case, in order to make a will just in their opinion, the jury found that the testator had never made a will of her own. There are not facts direct or pregnant sufficient to show duress, domination, fraud or imposition of the will of another upon the testator. She was apparently a sprightly woman seventy-two years old, who lived in an apartment with her husband where she did the housework. Nothing is shown to indicate senility or unsoundness of mind, or subservience. During the epidemic of influenza in November, 1918, her husband, an aged man, fell ill, and within a few days she likewise. Her husband died, and shortly after, when her influenza developed into pneumonia, she died. A few days before her death she made the will and executed it before three witnesses. With her sister-in-law and her niece and nephews, all resident in the city of the testator, she appears to have been on intimate terms. The four nephews, all adults, whom she cut off, were residents of Michigan. It does not appear that she had seen them for many years or had any written intercourse with them. It does not seem startling or strange that she should have preferred those in intimate association, to those who were comparative strangers and with no closer tie of kin. There was, of course, opportunity for wrongdoing by the beneficiaries, because the sister-in-law and her daughter were in alternate constant attendance day and night in nursing

the sick. But there is nothing sinister in that association, in view of the fact of the tie between them and the sick woman, and of the proof that there was a lack of nurses at a time when an attending physician testifies that he had 300 cases of influenza alone. And there was opportunity for wrongdoing by Woods, one of the favored nephews and the sole executor, for he caused the will to be prepared and brought it to the testator. Naturally enough, his mouth was closed by an objection made under section 829 of the Code of Civil Procedure, but without exception or motion it did crop out that he saw the testator before the paper was drawn and that she gave him the facts. Opportunity alone is of little probative force.

There are two circumstances upon which stress is laid by the learned counsel for the respondent: (1) When the will was prepared the husband of the testator lay dead in another room. His death was never made known to the testator. She must have supposed that he still lived when the will was executed, for she bequeathed all of her estate to him, with provision, " In the event, however, of the death of my beloved husband, the said August Preuss, prior to my decease," then all of her property should be divided as I have described heretofore. Of course, there was a mistake, but it did not exclude any natural object of the testator's bounty. And we have no reason to infer that if the testator had known that her husband was dead she would not have made this provision that was effective only after his death. Nor have we reason to infer that if she had known that her husband was dead she would have changed the will to the benefit of the other nephews or to the detriment of the present beneficiaries. The effect of the mistake was but acceleration. Quite a different question would have been presented if the mistake had excluded a natural object of bounty. Moreover, the objections raised no issue of mistake and the proof was but adduced to indicate fraud by imposition. The reason given for the silence as to the death of the husband is not far-fetched. It was the fear of the effect of such tidings upon the condition of the testator, who then lay desperately ill. (2) After the contents of the will were made known, the nephew Woods, one of the beneficiaries, wrote to his cousin in Bay City, also a nephew of the testator, and sent to him

a purported copy of the will, and later a waiver of citation and consent to probate. The will sent by Woods contained the same provisions as the will executed by the testator, but the former had an attestation clause, and the will had none although it was subscribed by three witnesses. The will itself is inartistically drawn. Woods testified without dispute that he caused it to be prepared by a stenographer — a fellow-employee, who was not a lawyer but who had some experience in drawing wills and owned a book of forms at home, which book the scrivener had in mind. The will forwarded by Woods is in technical language. The source of the copy is not made clear. It is possible that Woods may have used a form in the form book, of some approved character, or that he may have had a will drawn in technical language. The names signed to the attestation clause in the alleged copy are the same as the names of the witnesses to the original will. It is neither pretended nor alleged that the contestants were in any way misled or deceived by the will sent to them. And it does appear that they retained counsel who made an examination of the matter and who was afforded information by Woods.

An irregularity of procedure is urged by the appellant. While the jury were in deliberation it appears that one of the officers of the Surrogate's Court went in their room to pay them their fees. There is no evidence that this officer did anything wrong or attempted to do so, but it is important that none should have access to the jury for any purpose save as directly ordered by the court.

The decree and order of the Surrogate's Court of Kings county and the verdict of the jury upon the issue of fraud and undue influence should be reversed and a new trial ordered, but only upon that issue; costs to abide the final decree.

MILLS, RICH, PUTNAM and JAYCOX, JJ., concurred.

Decree and order of the Surrogate's Court of Kings county, and verdict of the jury upon the issue of fraud and undue influence reversed and new trial ordered, but only upon that issue; costs to abide the final decree. Order to be settled before the presiding justice.