In the Matter of Proving the Last Will and Testament of MARY B. DOWDLE, Deceased.

CHARLES M. DOYLE, Appellant; BART L. DOWDLE, Respondent.

Fourth Department, November 9, 1928.

*Udelle Bartlett* [*D. P. Morehouse* of counsel], for the appellant.

*Francis D. Culkin* [*Avery S. Wright* of counsel], for the respondent.

CLARK, J. A jury by its verdict has said that the will made by Mary B. Dowdle, of the city of Oswego, deceased, was duly executed. This was by direction of the trial court. The jury has also said upon disputed evidence that said testatrix at the time of the execution of the will in question was of sound mind and memory and capable of making a will. Then the jury has stated by its verdict that the will was obtained as the result of undue influence, and solely because of that fact the instrument has been denied probate.

There was no appeal from the decision with reference to the due execution of the will, or the fact that the testatrix was of sound mind, and we are, therefore, concerned only with the question whether the finding that this will was the result of undue influence was warranted by the evidence.

The testatrix, Mary B. Dowdle, was a resident of the city of Oswego, and died November 21, 1925, aged seventy-three years. She left an only son, Bart L. Dowdle. Her husband had died about two years previously. The son was unmarried. He was upwards of fifty years of age at the time of his mother's death. He had always lived at home and been supported by his parents. He had never engaged in any business, and never had any regular employment. There was ample evidence that he used intoxicating liquors to excess, and that his dissolute habits had occasioned his mother much anxiety.

The will which has been denied probate on the sole ground that it was obtained by undue influence, was executed nearly a year prior to the death of testatrix. It disposed of an estate of about $125,000. By its terms the testatrix created a trust in favor of her son. She gave $800 to two persons who had been in her employ

for many years, and then made a few specific legacies of jewelry and clothing, and next provided that her son should have the net income from the entire estate during the period of his natural life. In addition to that her executor and trustee was authorized to use so much of the corpus of the estate as might be necessary for the purpose of supporting and maintaining her son during his lifetime. Upon the death of the son she gave legacies to various charitable and religious institutions in the aggregate amount of $68,000, and the residue of the estate, upon and after the death of the son, was devised to the person named as her executor and trustee.

The will contains this significant clause: " Before making this will, I have given much thought and meditation to the subject of the disposition of my estate, having in mind the personal habits and peculiarities of my son, Bart L. Dowdle, and if it should be necessary for his best good, I would be glad to have my entire estate devoted to his necessary and proper use if a situation should arise which required it. I have disposed of my estate in accordance with this will, not because it was my natural desire so to do, but because I have deemed it for the best interest of my son, fearing that if my estate was left to his management and control that it would be wasted, and that by reason thereof he would become destitute."

The evidence fully justified the fears of this elderly lady as to what would probably become of her property if left to the management of the son.

There is much evidence that he was dissolute and had been for years. He never worked and never attempted to follow any employment of any kind so far as disclosed by the record. When not under the influence of liquor he was kind to his mother and drove her automobile to her satisfaction, but when he had been drinking the mother was anxious and grieved and feared he would do harm either to himself or others. There is evidence that his recklessness with the automobile was such that on one occasion at least she was obliged to forbid him to use the car and on his refusal to comply with her request she sent for the proprietor of a garage and had the car taken away from her premises and kept in the garage so her son could not get it. He had left his home on many occasions and his mother had enlisted the services of several people, including the police officers of Oswego, to find him and get him to come home. One of the persons called on by her was Mr. Charles M. Doyle, a resident of Oswego, whom she named as executor and trustee under her will. She had known Mr. Doyle from childhood. He was a boy friend of her son. She and her family and the parents of Mr. Doyle had been intimate friends for a lifetime, and her husband was a distant relative of Mr. Doyle's

mother.  Doyle and her son were nearly of the same age and attended the same church.  The families exchanged visits for years, and testatrix and Doyle and his brother exchanged presents at Christmas time.  She always liked Doyle from his boyhood days and on to the end of her life, and he was fond of her.  When they would meet at her home they always embraced each other, and that custom continued during her entire life.  He had always been kind to Mrs. Dowdle and she appreciated these courtesies and thought a great deal of him.  The record shows that she often expressed to her neighbors and friends her liking for him and her appreciation of his acts of kindness to her.  Indeed, in her extremity when her son was drinking she leaned on Mr. Doyle for assistance, and he never failed her.

This was the gentleman, a lifetime acquaintance, more than twenty years her junior, who was made residuary legatee of her estate and her executor and trustee.

The jury by their verdict, while saying that Mrs. Dowdle was competent to make a will, and that in making the instrument offered for probate all the requirements of law had been complied with, said that this will was the result of undue influence.

I think the proof does not justify that finding.  In view of the habits of the son, which were well known to testatrix, her scheme for providing for his comfort and support, even to the extent of using the entire corpus of the estate after paying $800 to household servants, and guarding against the possibility of his squandering the property, was not only natural but was most prudent.

There is no direct evidence that Mr. Doyle ever said a word or did a thing to induce testatrix to make this will, or any will.  The mere fact that the witnesses to the will were his friends, or that he summoned them to witness it, would not justify the inference of an undue influence.

The fact that he is a legatee is no evidence that he exercised any undue or improper influence over testatrix.  There is not a word in the record showing that this man made a single suggestion to this lady about her will or did a thing to induce her to make it in any particular way.

This is another illustration of the tendency of juries to make wills for people where they do not like them.  They have never been given any such power or authority.

To invalidate a will on the ground of undue influence there must be some evidence of facts that would justify the inference at least that undue influence had been exercised.  The mere fact that a party benefited by a will had the opportunity to exert such an influence, and that he had the motive to do it, is not enough.

(*Cudney* v. *Cudney*, 68 N. Y. 148; *Matter of Woods*, 189 App. Div. 324.)

Undue influence, such as to destroy a will, must be established by the party who asserts it. That burden here rests upon the contestant. To justify the setting aside of a will on the ground that it was procured by undue influence, it must be shown that such influence actually entered into the testamentary act.

Undue influence means any improper constraint, urging or persuasion whereby the will of the testator is overcome and he is induced to do an act with reference to the disposition of his property which he would not do if left to act freely and of his own volition.

But not every influence exercised over a testator is undue or improper. In order to have an undue influence exercised over a person who is about to make a will, it must be such an influence as to amount to moral coercion, and must be such as to destroy the free agency of the testator and substitute the will of another in place of his own. (*Matter of Manay*, 181 N. Y. Supp. 648; *Matter of Bogardus*, 198 App. Div. 399; *Matter of Price*, 204 id. 252; *Smith* v. *Keller*, 205 N. Y. 39; *Matter of Brand*, 185 App. Div. 134; affd., 227 N. Y. 630; *Matter of Kennedy*, 190 App. Div. 896; affd., 229 N. Y. 567.)

Contestant claims that there is no evidence that testatrix ever read this will, or that it was read to her. We are not concerned with that question for the reason that it is undisputed that she signed and executed the will, and she is presumed to know what she signed. Moreover, the jury has said that the will was properly executed.

The contestant complains that the son was not present when this will was executed. There is no law that required it, but even if he was not present, by the terms of the will she made ample provision for him and sought to safeguard his interests.

There is no direct evidence of undue influence on the part of Mr. Doyle, and the facts proved would not justify the inference that such influence was exerted.

It is of course almost impossible to prove undue influence by direct and positive evidence. It must be established, if at all, largely by circumstances and little incidents that arise in the daily lives of parties, but when a party contests a will of a competent testator on the ground of undue influence, he must establish it by a fair preponderance of the evidence, and the burden rests on the party who asserts it. (*Matter of Dotterweich*, 210 App. Div. 131; *Matter of Rundles*, 216 id. 658; *Matter of Kindberg*, 207 N. Y. 220.)

The contestant here has not borne that burden. This old lady was competent to make a will. The jury has said so on conflicting

evidence, and that finding is amply supported by the evidence. The will was duly executed. Under the circumstances the right that the law gives to a competent testator to make testamentary disposition of his property should not be lightly taken away and handed over to the tender mercies of a jury.

If Mrs. Dowdle was competent to make a will, as the jury found, she and not the jury had the absolute right to say what she should do with her property, and that right should be jealously guarded.

To defeat this will, of a competent testatrix, on the unsatisfactory and inconclusive evidence produced by this contestant, would be taking away from her the right given by statute to make a testamentary disposition of her property. (Decedent Estate Law, § 10; Id. § 15, as amd. by Laws of 1923, chap. 233; Id. § 21.)

Proponent complains of many of the rulings of the trial court and particularly because of the rejection of a prior will, but the verdict on the question of undue influence must be set aside as being contrary to and against the weight of the evidence, and it is, therefore, not necessary to pass on those questions.

The verdict in so far as it determines that the will in question was procured by undue influence, should be set aside, and the decree of the surrogate of Oswego county should be reversed on the law and the facts, and the matter remitted to the surrogate with directions to enter a decree admitting the will to probate, with costs to appellant payable out of the estate.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and SAWYER, JJ.

Decree and order reversed on the law and facts, with costs to appellant payable out of the estate and matter remitted to the surrogate with directions to admit the will to probate.