Leon Schwerzmann, Jr., J.
In this contested probate proceeding the proponent has moved for summary judgment under CPLR 3212. The facts which the parties expect to prove, as evidenced by the affidavits submitted by the parties, the preliminary examination of the witnesses to the will, and the examination before trial of the proponent, may be summarized as follows:
*797 The proponent of the will, who is the principal beneficiary thereunder, and the testatrix had been friends for about 30 years, enjoying a close friendship during the proponent’s childhood and thereafter maintaining a reasonably close friendship. Following the death of the testatrix’ husband on January 9, 1967, the proponent, who had herself been recently widowed, assisted the testatrix with the funeral of testatrix’ husband, and thereafter until the testatrix ’ unexpected death some three months later, ran errands for her, prepared an occasional meal for her, and generally helped and advised the testatrix with both her personal affairs and estate matters. The will draftsman’s partner, who had been handling the estate of proponent’s husband and who had been a close personal friend of proponent’s husband, received word from the proponent sometime in the early or mid-part of February, that the testatrix desired legal assistance in handling the'estate of testatrix’ husband. The draftsman of the will, who had not previously known the testatrix, first met her when he went to her home on or about February 16,1967 to confer with her. During the course of the conversation on that occasion, the testatrix showed the draftsman a prior will which she had executed some 30 years before, designating her husband as sole beneficiary, and she asked the draftsman to draw up a new will according to certain handwritten instructions she had prepared. Her wishes for her new will at that time, as reflected by her written instructions, were to give her residence and its furnishings to the proponent and to give the residue of her estate to four named charities. Subsequently, the draftsman assisted the testatrix in collecting some insurance policies and an account receivable of the small family candy business which she was attempting to liquidate, and advised her with respect to some of her personal affairs. The draftsman also prepared a will according to her instructions and sometime in early March went to her home to have it executed; but the testatrix was not in.
On March 23, 1967, the testatrix, who had not been eating well and had been losing weight, entered a local hospital for treatment and observation. Upon her discharge on March 27, 1967, the testatrix telephoned the draftsman and requested that he come up to her residence to discuss her will. The draftsman visited the testatrix that same day and took with him a proposed will in the form she had requested, designating four charities as the residuary beneficiaries. The testatrix, however, indicated that she had changed her mind about the gift of the residue of her estate, and, in the words of the draftsman on the preliminary examination, this was her explanation for her changed *798 intent: ‘ ‘ She said that she had been in the hospital and while she was laying there she realized that these charitable beneficiaries that she had given it to had never done anything directly for her and that she wished to have her residuary clause changed. She said that she realized that it was Mrs. Storms (the proponent) who had taken care of her in the last few years and she had taken her to the hospital and had visited her and brought her back home and she had a long acquaintanceship with Mrs. Storms from when Mrs. Storms was in school and she stated that she wished Mrs. Storms to be the substituted beneficiary of the major portion of her estate.” The draftsman returned to his office and prepared the will which is presently being contested and under which the proponent had been substituted as residuary beneficiary in the place of the four named charities. This will was executed on the morning of March 28, 1967; and the testatrix died suddenly of an unexpected heart attack on the evening of that same day. At no time during any of the conversations between the draftsman and the testatrix respecting her will, nor at the execution thereof, was the proponent present.
CPLR 3212 provides in part as follows: “ (a) * * * any party may move for summary judgment in any action, after issue has been joined.”
“(b) * * * the motion shall be granted if, upon all papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of Idw in directing judgment in favor of any party. The motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact other than * * * damages.” •(Emphasis supplied.) One of the “fixed principles or doctrines ’ ’ of the remedy is that it shall be 1‘ available to plaintiffs and defendants in all forms and kinds of civil actions. ’ ’ (Paston, Summary Judgment, 1963, p. 20.) The provisions of the CPLR are applicable to practice in the Surrogate’s Court (SCPA 102; CPLR 101); and the provisions of CPLR 3212 may be invoked by parties in contested probate proceedings, wherever otherwise appropriate. (Matter of Pascal, 309 N. Y. 108; Matter of King, 16 A D 2d 614; Matter of Devine, 41 Misc 2d 211; Matter of Pieper, N. Y. L. J., Oct. 30,1967, p. 20, col. 5.)
On the basis of such proof as the parties on this motion have indicated they possess and intend to offer, there would appear to be no triable issue of fact. The only questions placed in issue by the objections are (1) whether the decedent possessed testamentary capacity, and (2) whether the will was a product of fraud or undue influence exercised upon the decedent by the proponent or someone in privy with her.
*799 The burden of proving testamentary capacity, of course, rests on the proponents. The draftsman and his secretary have testified that the decedent was perfectly competent to make a will. Quite apart from their testimony, which the contestants are not prepared to controvert, and the presumption of testamentary capacity, which exists, until the contrary is established (Matter of Beneway, 272 App. Div. 463, 467), there are present in this instance many circumstantial indicia which the courts have considered significant as establishing testamentary capacity. The decedent made sensible replies to inquiries (Matter of Case, 214 N. Y. 199, 203), talked intelligently upon ordinary topics and acted intelligently in matters which engaged her attention (Horn v. Pullman, 72 N. Y. 269, 275). She handled details of her own living affairs normally and properly (Matter of Goeb, 290 N. Y. 894; Pettit v. Pettit, 149 App. Div. 485, 490). She was capable of transacting her business affairs properly (1 Davids, N. Y. Law of Wills, § 34, p. 57; Matter of Horton, 297 N. Y. 891, 892; Matter of Wolf, 196 App. Div. 722, 728 [4th Dept.]), did in fact conduct her affairs in an intelligent and satisfactory manner until the time of her death (Matter of Lasak, 131 N. Y. 624, 626), and, as far as the record shows, her friends, business acquaintances, and relatives always treated her as responsible. (Marx v. McGlynn, 88 N. Y. 357, 370; Lavin v. Thomas, 123 App. Div. 113, 116 [4th Dept.].)
That the decedent knew the condition of her property, her nearest blood relatives, and the effect and scope of her will, is evident. The decedent was well aware of the nature and extent of the property she possessed. She was handling the affairs of her husband’s estate, “ and consequently knew the value and extent of his property, which constitute(d) the bulk of her estate.” (Matter of Williams, 15 N. Y. S. 828, 838, affd. 19 N. Y. S. 778, affd. 141 N. Y. 572). She was in correspondence with her nearest relatives after the death of her husband; and had indicated no intent to favor them with her bounty either in her former will or in her written instructions for her new will.
The contestants are not prepared to offer any direct evidence of testamentary incapacity. Bather, they seek to infer a lack of testamentary capacity from circumstantial evidence, i.e., from the decedent’s distress over her husband’s death, her age (79 years), her loss of appetite and weight, and her sudden death on the same day she executed her will. As none of these factors individually are inconsistent with testamentary capacity or present a triable issue of fact thereon, their collective effect can be no greater. The decedent’s distress over the death of her husband was a perfectly normal reaction, and absent, as here, any *800 indication that it affected her testamentary capacity, it is of no probative value. “ The mere fact that decedent died within eighteen hours from the making of the will and was in pain at the time of its making presented no issue ” to be submitted to a jury. (Matter of Hermanowski, 279 N. Y. 727, 728.) “Mere old age, physical weakness and infirmity or disease or failing memory are not necessarily inconsistent with testamentary capacity.” (Matter of Beneway, 272 App. Div. 463, 467, supra). The last minute change in the testatrix’ intent does not stand unexplained. She herself offered a perfectly natural and rational explanation for her change of mind. Even were there proof, and there is none, that the proponent urged or persuaded the testatrix to change her will in favor of herself, there could be no presumption that the proponent had acted improperly. “ A person has the right to use any reasonable and legitimate argument to induce another to make a will in a particular way. The giving of advice and the use of argument and persuasion do not constitute ground for avoiding a will by a competent executrix even if the will is made in conformity with the advice so given.” (Smith v. Keller, 205 N. Y. 39, 44; Hagan v. Sone, 174 N. Y. 317, 320; Matter of Walther, 6 N Y 2d 49, 55.)
Though the contestants have the burden of proving fraud and undue influence (Matter of Schillinger, 258 N. Y. 186, 192-193), they are prepared to offer no direct or circumstantial proof of either. Concededly, the proponent had both the motive and opportunity to act improperly, but this does not suffice. “ It is not sufficient to show * # * motive and opportunity to exert such influence; there must be evidence that [the proponent] did exert it, and so control the actions of the testat[rix], either by importunities which [she] could not resist or by deception, fraud or other improper means, that the instrument is not really the will of the testat[rix].” (Cudney v. Cudney, 68 N. Y. 148, 152; Matter of Walther, supra; Matter of Dowdle, 224 App. Div. 450, 453 [4th Dept.], affd. 256 N. Y. 629; Matter of Williams, 19 N. Y. S. 778, 780, affd. 141 N. Y. 572, supra).
Undue influence, which is a form of “ coercion and duress ” (Smith v. Keller, 205 N. Y. 39, 44, supra) and “ a species of fraud ” (Matter of Smith, 95 N. Y. 516, 522), “ must be proved, and not merely assumed to exist,” (Loder v. Whelpley, 111 N. Y. 239, 250; Matter of Schillinger, 258 N. Y. 186, 189; Matter of Dowdle, 224 App. Div. 450, 453-454 [4th Dept.], affd. 256 N. Y. 629) “ neither surmise, conjecture nor doubt can take the place of proof ” (Matter of Streb, 247 App. Div. 556, 560 [4th Dept.]; Dobie v. Armstrong, 160 N. Y. 584, 594-595). There must be affirmative proof, either direct or circumstantial, that fraud or *801 undue influence was actually exercised or exerted (Matter of Walther, supra, pp. 54 — 55; Matter of Moskowitz, 303 N. Y. 992, 993; Matter of Dowdle, 224 App. Div. 450, 453, affd. 256 N. Y. 629, supra; Marx v. McGlynn, 88 N. Y. 357, 370, supra; Cudney v. Cudney, 68 N. Y. 148, 152, supra). The contestants are not prepared to offer any direct proof as- to fraud or undue influence, nor proof of any circumstances which are not as “ equally consistent with the assumption that the will expressed the decedent’s own voluntary intent ’ ’, as with the ‘ ‘ hypothesis that the chief beneficiary induced the will by undue influence.” “An inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference.” (Matter of Walther, 6 N Y 2d 49, 54.) Facts must be proved- from which fraud or undue influence ‘1 result as an unavoidable inference.” (Matter of Schillinger, 258 N. Y. 186, 190.)
“ Wills are not to be set aside by juries except for the gravest reasons. A person has a right to dispose of his property in such way and to such persons as he thinks best. It is only in a case where there is substantial proof of mental incapacity, or of undue influence, that courts or juries may annul his testamentary act. ’ ’ (Hagan v. Sone, 174 N. Y. 317, 323, supra; emphasis supplied.)
The court is of the opinion that the contestants in this instance have demonstrated no proof of testamentary incapacity, fraud, or undue influence, let alone such ‘ ‘ substantial proof ’ ’ as would warrant submitting any issue to a jury; and that upon the proof demonstrated herein, the court would have no alternative but to direct a verdict in favor of the proponent on each issue (CPLR 3212). Accordingly, the proponent’s motion for summary judgment must be granted, and contestants’ objections dismissed.